May it please the court, my name is Donald Etra and I'm representing the defendant-appellant David Stein. Our first challenge in this case is to the search warrant. And the defendant-appellant is seeking to suppress the evidence from the search warrant on two grounds. The lack of credibility of the government informant, an individual from Croatia, which the government itself admitted they had no basis to rely upon or find credible. And the second basis for the suppression of the search warrant itself is staleness on the grounds that it made reference to a connection between a computer connected to my client and child pornography. As of April of 2003, the search warrant was, in November of 2003, a six-month lag. And we would submit that there's no evidence that my client was associated with a computer at the time the search warrant was executed or any time near then. So we would submit that the search warrant should be suppressed on those two grounds. We also argue that the evidence from the computer should be suppressed on the grounds that the judge who granted the permission to examine the computer gave the government 60 days to do so. That order was signed on October 28 of the year in question. It was executed. This computer was seized on November 4 of 2003. The government did request its own analyst to analyze the computer on November 21. But actually, after the 60 days had expired, and quite a considerable amount of time after the 60 days had expired, that is, March 2 of the following year, the government suddenly woke up, realized their analysis hadn't been done, they didn't return the computer, they sought an extension, and the analysis was done 10 days later. But, Mr. Ettrup, let me stop you for a second here. You're down to your third point. If I could take you back. On a lack of credibility of the government informant, the Croatian lead, didn't the FBI independently trace back to your client's e-mail number and find out that it was his computer? Yes, but that was the original basis. Right. So, I mean, why was that unreliable? Because in order to do any investigation, we would submit that the government would need a reliable witness. They get a tip, and they don't know whether he's reliable or not, but they follow what he says, and they find this computer. That's an improper basis. They shouldn't even do an investigation of the man's telephone number. In other words, an e-mail number, unless they have independent belief that this is a reliable source. I would say reliability would be one factor that the court would need to take into account in determining the probable cause for the search. For investigation? This is for investigation pre-search. That's your position. Okay. Now, on the 60-day expiration, it seems to me that the way I read it is that Warren stated that if the FBI determined that the data contained in the computer was not child pornography, then the computer had to be returned to Stein within 60 days, a position with which I guess I'm singular because the government doesn't agree with that. The government seems to say your position, that the computer should have been searched within 60 days, and if it wasn't searched in 60 days, it's stale. Our position is that Rule 41 does contain certain strictures on the ability of the government to have and search evidence. It's not unrestricted. And there would be no way the government would know what it has until it does the analysis. But doesn't Rule 41 bar the evidence only if there is an intentional and deliberate disregard of the terms of the warrant? Well, it seems that the delay, no one woke up to the fact that they hadn't done the analysis. Well, not waking up isn't exactly deliberate and intentional, is it? It shows a disregard, I think, for the rights of a person whose property has been seized by the government, and disregard for the parameters that the judge who executed or who signed the warrant put upon the warrant, namely the examination within 60 days. Okay. Thank you. We also submit, Your Honor, that the appellant's statements that he made during the November 4, 2003 search should be suppressed based on the totality of the circumstances, that the government's action in the case, banging on the door, ordering the defendant to open the door, pointing guns at him, handcuffing him, placing him on the balcony, detaining him for two and a half hours. Could I ask you this question? Could you point me to where in the record is any evidence as to when the statements were made with respect to when the handcuffs were on or about to be removed? What's the temporal relation between handcuffs, handcuffs removal, and statements being made? I cannot. I know that there was a question below as to the audibility of a tape that apparently occurred during the course of the search, and we were never able to get an audible portion of that to determine the exact temporality that the Court requests. We do know that he makes the statements after he states, and this is page 35 of the volume 2 of the excerpt of record where we have Mr. Stein's declarations, where he talks about the totality of the circumstances, what happened to him on the morning of the search, his statements regarding wishing to have a lawyer for that. You know it is in your best interest to cooperate with us. It will work in your favor after he requests the lawyer. So I do not know the exact timing during the course of the two and a half hours. Well, it does make a difference, doesn't it? I mean, if he's not in custody, then the Miranda warnings don't have to be given to him, generally. If the handcuffs have been taken off, he makes a statement, and then he asks for a lawyer. That doesn't favor your case. I believe that the Court's asking two different things about whether he makes the statements while the handcuffs are on. Right. There's no evidence as to the exact timing of that. And, of course, since your client has a burden of showing he was in custody, the absence of evidence cuts against him. Well, I think the short answer to that is probably yes. I mean, he could have put it in his affidavit that I was still handcuffed when I made those statements. Yes. And he didn't. That is not in his affidavit. That is correct. We must presume he didn't have handcuffs on. The record is not clear as to whether he did or did not. And on moving to suppress the evidence, I wondered why Mr. Stein waited for his reply to declare he had asked for a lawyer and was held at gunpoint, rather than saying as much in his opening papers. He didn't say that until the reply. The Court is referring to the sequence of the motions? Yes. That is correct. He did not make that declaration until the reply brief. But the Court did have it in front of it when it was deciding the motion. It sort of raises a question in my mind as to whether or not he was in custody, as he claimed. I know we were seeking at that time to try to get the tape of that morning's events. And we had an audibility problem. We were never able to get that tape to discuss this. The Court has asked about the temporal nature of what happened during the sequence of the two-and-a-half hours. I think it makes logic that he did request a lawyer, and after that, he was questioned when the FBI continued to try to persuade him that to lull him that things would go better with him if he cooperated. The statements were made, I think, fairly quickly. He's not in custody. They're not trying to do that. Well, I think you look at the totality of circumstances, and I think there is some attractiveness to looking at the person. Let's move backwards. Let me just make sure. If he is in custody and he says, I want a lawyer, they have to stop questioning him right there. We're dealing with that, right?  If he says, look, I don't want to talk. I want a lawyer. They have to stop questioning him and get him a lawyer. But if he's not in custody, they can, you know, he can say, gee, I'd rather have a lawyer here, and they can say, hey, you know, you're stupid. You're better off cooperating. It'll help you. They have no obligation to stop. If they're just chatting with him and he's not in custody, they have no obligation to stop, right? But the Court's question presupposes, was he in custody? And I'm asking the Court to look at the totality of the circumstances. You heard the if part of my sentence, the premise. Yes. If he's not in custody. You don't have to agree that he's not in custody. I'm just saying if he is not in custody, then they have no obligation to stop talking to him when he says, I want a lawyer. Yes. Okay. So to a large extent, it hinges on whether or not he's established that he was in custody. And I would submit that the factors for agents in the apartment having been handcuffed, having been accosted at gunpoint. Being handcuffed during a search is pretty standard. Sometimes. Isn't that right? I mean, it's pretty standard. I've been at search warrants where individuals have been handcuffed, and I've been at search warrants where they have not been handcuffed. So I don't know if there's a standard operating procedure that each government agency has. But I think you're in your own apartment. It's early in the morning. You've got four agents there. You're a, essentially, you're a public school teacher who's never been in trouble. Didn't they say to him, you're free to go, you're free to go? Yes. And as his affidavit indicates, he did not believe that those statements were credible. He didn't put them to a test? He didn't say, okay, in that case, I'm going? I think he was petrified at the time. So what's your answer to me? On what specific question? He didn't ask? He did not put the agent's statements, you're free to go, to the test. The agent's being there with guns, the handcuffs, in his shorts and T-shirt, in his own apartment, early in the morning. Maybe he wanted to stick around and think he could influence the agent by talking to them and telling them lies. Well, that's not what his declaration. No, but that's, he wouldn't say that. Okay. Well, that's, again, that's not what his declaration does indicate. So we would submit that the totality of the. . . You are out of time. We'll hear from the government now. Thank you. Ms. Meyer, I'd like you to state for me the government's position on the reading of the search warrant 60-day deadline. Do you agree with the appellant that the warrant says that there's a 60-day deadline in which the computer must be examined? Your Honor, the search warrant, the 60 days specified in the search warrant, is language that the government puts in its search warrant to provide a temporal reference for the definition of reasonableness under Rule 41. The language of the search warrant says that the court, or I'm sorry, the government can go back to the court and seek authorization to continue the search. And in this case, when the government went back, when it discovered that its 60 days had expired, it went back and sought additional authorization from the magistrate, from another magistrate. But I believe, as Your Honor pointed out, at the time of the defendant's statement on November 4, 2003, he confessed that, in fact, his computer contained child pornography. So under Kallenberg, the government wouldn't have been able to return the computer had the defendant requested it, because at that point, it was determined to be an instrumentality of the offense and contained contraband. But nonetheless, in recognition that the government had not searched the computer within 60 days, the government went back, as I think was the reasonable thing to do. So you do read the search warrant as requiring the government to examine the computer within 60 days, unless the 60 days is extended? Your Honor, not exclusively because of the Kallenberg decision and the fact that the defendant confessed that the information on the computer would contain child pornography. But the question. At least as I understood it, you do concede that it's as far as authorization for the search comes from the warrant alone? There was a 60-day limitation. If it comes from the search warrant alone. But, Your Honor, the authorization. Excuse me. I understand there's another basis, okay? But as far as the warrant itself is concerned, I mean, there may be another basis. As far as the warrant itself is concerned, its power was spent 60 days after seizure. Absent going back to the court for additional authorization, which the government did do. But Rule 40. I'm sorry? Had they done any search between the 60-day expiration and the time they received authorization? No, Your Honor.  Can you hear my question? After the 60 days expired and before they got reauthorization, did they do any searches? I'm sorry, Your Honor. No, they did not during that time period. The government waited until it got additional authorization from the magistrate. I apologize. Even if the 60-day search warrant is interpreted as we've been doing so in this colloquy, is it your position that that isn't a basis for suppression? Your Honor, no, because Federal Rule of 41 – I'm sorry, Federal Rule of Criminal Procedure 41 talks about reasonableness. And courts have found that even where the government doesn't search within the time period allocated in the search warrant, that they look at the total time period to determine whether the search was reasonable. And in this case, we had 60 days under the original search warrant, and then we – Judge McMahon gave the government an additional 30 days to search the computer for a total of 90 days. So we have – 90 days is certainly considered reasonable for the government to execute a search warrant of a computer. Similar to sentencing issues, the government believes that the definition of reason – I'm sorry, Your Honor. You say – I think you're making a series of concessions, which I'm frankly surprised at. There's – Rule 41 says it's got to be reasonable, otherwise the defendant can ask for the property back. But as far as suppression, isn't there a requirement that the government action be intentional and deliberate disregard? Yes, Your Honor. That's a little bit more stringent than reasonableness, isn't it? Yes, Your Honor. And if I fail to make that clear, I apologize. I mean, you're not abandoning that position, are you? No, Your Honor. The reason – I've got you. Well, let's talk about the period after the 60 days expires. Let's say there had not been a reauthorization. I'm sorry, Your Honor? Let's say there had not been a reauthorization, or for some reason the reauthorization is invalid. Can you get yourself enough frame of mind? So they now have a confession from the suspect that this is contraband, and they can't return to him. But that's quite different from saying they can search him. That's correct, Your Honor. Does – I mean, they can hold on to it, and they might be able to destroy it, or I don't know what happens to contraband. Probably, since it's case pending, they wouldn't destroy it, but presumably whatever else they do, they can't hand it back to him, because it's – it would be like discovering it's heroin, right? They couldn't hand it back to him. But that does not give them authority to search it, does it? Your Honor, they could search it outside the scope of the search warrant, the terms of the search warrant, if that period was considered to be reasonable. We have the district case out of Puerto Rico, the Hernandez case, where, in fact, the government examined floppy disks outside the timeframe specified in the warrant, and no extension was applied for, and the court found the total time to be reasonable. But where does the authority to search it come from? Rule 41, the Fourth Amendment mandate of reasonableness, Your Honor. If the time period is reasonable, the government can – Why don't you need a warrant? I mean, you've seized it, and so there's no exodus. This is not a situation where SSG would go out and search it now because somebody might come along and erase it, or the data might disappear or anything of that sort. It's safely in the custody of the government. They can't give it back. They can't get acquired to give it back and all that. Why aren't they then required to go in and get a warrant authorizing the search, even though they have the computer in their possession? I'm sorry, Your Honor. Why aren't they authorized to go get a search warrant after it's already in their possession? Required, not authorized. Required to get a search warrant once it's – Well, they seized the search warrant – I'm sorry. They seized the computer pursuant to a search warrant, and in an attempt to define reasonableness, set forth a time period during which it had to be searched. So it seems reasonable that the government in acknowledgment that, you know what, we didn't search it within the 60 days, would go back and seek an extension. But you see, you promised to put that out of your mind that they got reauthorization. Remember? You promised me that. You said you understood. Right. And then you went and did it anyway. So let me get you back to what I said. Let's say they didn't get reauthorization. I thought your position was they had authority by virtue of the fact that this was contraband. They couldn't return it, and therefore they could search it. And my question is, why wouldn't they require a warrant to search it? Just the fact that they have possession of it, and they couldn't – they now know it's contraband, and they can't return it, is not authority to search it, is it? That's right, Your Honor. Kallenberg, I don't believe, would authorize them – the government – They would still need a warrant. Yes, Your Honor. Okay. So the reauthorization really does become crucial. Yes, Your Honor. Okay. All right. So reauthorization is not just an alternative means. It is the key to the government's argument. Well, Your Honor, that's, in fact, why the government went back and asked for reauthorization. I understand. But you don't have parallel arguments. What you have is one argument that hinges on the validity of reauthorization. Your Honor, but there clearly are cases out there that have authorized or said that a search warrant was reasonable even when the search was conducted outside the terms of the search warrant. And the government believes that those are also significant. And while, yes, the government recognized that it made a mistake and went back for authorization, the fact is that the real test is whether or not the time period itself should be considered reasonable. And in this case, we're talking about a 90-day period that was authorized for the government to search the computer. Does those cases involve a time limit in the warrant? Your Honor, Hernandez did, in fact. This is the Puerto Rico case? Yes. And the search warrant was to be executed by August 8th. I believe it was issued on July 30th. And while some of the computer media was searched within the time period specified in the warrant, the search of the floppy disks were not. That search occurred a little over a month later on September 13th. And in that case, the court found the time period, looked at the time period itself as a total to see whether, in fact, it was reasonable. Okay. Your time is up. Thank you. I'll get it. Your Honor, we would submit that the alleged confession, which based on other arguments is problematic, would not provide a bootstrap for permitting them to retain. So what's alleged about it? He denies he said it? No. The specific nature of child pornography is such that one might think that he or she has child pornography, but until an expert actually sees it and determines it's real children as opposed to being morphed or somehow digitally created, the confession is worthless unless you can determine it's actually child pornography. Okay. And also on sentencing, my last argument in my brief relates to the fact that the benefit of this bargain was not achieved. In this case, he was envisioning a sentence of between 21 and 27 months. He received a sentence of 50 months. Three and a half years after the government had seized the computer, they I think had proven 40 images were actual child pornography, and only in the last days did they try to up it to a figure above 600 to increase the sentencing guideline. Thank you. Okay. Thank you. All right. We'll stand for a minute. In the last case on the calendar, it's Khan v. Chantler-Protters. Thank you.
judges: Kozinski, Nelson, Bea